**KEENE CORPORATION, Relator,**

v.

**Honorable Don WITTIG, Respondent.**

**No. B14–93–00163–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 10, 1993.

James H. Powers, Kenneth C. Baker, Houston, Martin H. Redish, Chicago, IL, for appellants.

Steve Kherkher, Melinda L. Wesner, Houston, for appellees.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This original mandamus action involves a discovery dispute between Relator and numerous Plaintiffs involved in personal injury and wrongful death actions concerning asbestos exposure. These plaintiffs are listed in the so-called Master Asbestos File in Harris County, Texas. This Master File was created by the Harris County district judges to centralize and streamline the handling of the large number of pending asbestos-related lawsuits. Mr. John Williams, an attorney representing a number of the Plaintiffs listed in the Master Asbestos File, served interrogatories and requests for production on Relator seeking to discover evidence regarding a newspaper advertisement published in the *Houston Chronicle* during the seventh day of jury deliberations in a related lawsuit styled *Orsak v. Keene Corp.*, Cause No. 85–44379 ("*Orsak*").

The concerned advertisement contained, among other things, strong statements of opinion by the president of the Relator company regarding the wastefulness of asbestos-related lawsuits, exorbitant legal fees, and the large awards Relator had paid to many successful plaintiffs. The advertisement was also placed in other publications across the country at different times as part of a nationwide attempt to draw public attention to what Relator perceived as a growing legal, social, and economic problem caused by asbestos-related litigation.

Relator objected to this discovery attempt by plaintiffs on the grounds that: the advertisement was wholly unrelated to the underlying asbestos lawsuits in the master file; the publication, and any evidence related only to it, were protected speech under the First Amendment to the United States Constitution, and the like requirements of the Texas Constitution; the discovery was sought only for the purpose of harassment; and the requests sought information protected by the attorney-client and/or work product privilege. Plaintiffs responded that the advertisement and the motivation behind its publication were material to the punitive damage issues in the underlying lawsuits in the master file. Respondent conducted an *in camera* inspection of Relator's responses to the discovery, and on February 3, 1993, he overruled Relator's objections and entered an order requiring Relator to respond to essentially all of plaintiffs' discovery motions by February 16, 1993. After receiving an extension for time to file responses, Relator brought this mandamus proceeding, seeking mandamus relief from this order.

A brief history of the surrounding facts is necessary for a complete understanding of this case. As mentioned previously, during the seventh day of jury deliberations of another master file asbestos case, *Orsak v. Keene Corp.*, Relator published the advertisement in question in the *Houston Chronicle*. Fearing that some of the jurors might have read the publication and been influenced by it, the trial judge, Judge Sharolyn Wood, expressed concern and indicated that she would order Relator to produce documents concerning the motivations behind placing the advertisement. After receiving the verdict in favor of the plaintiffs, Judge Wood presented the publication to each juror and inquired as to whether he or she had seen it. Each juror responded that he or she had neither seen, nor discussed it during deliberations.

Subsequently, Judge Wood granted plaintiffs' Motion for Additional Discovery, which sought such information as to how much the advertisement cost, why it was placed, and what sources were used to obtain the information and opinions propounded in the publication. Initially, Judge Wood denied the motion, but approximately a week later entered an order dated April

10, 1992, requiring Relator to produce "all documents, correspondence, in-house memos, drafts, and correspondence concerning [Relator's] advertising campaign in any newspaper or other print media throughout the United States, particularly including any documentation going to [Relator's] intent in placing the ad which appeared in *The Houston Chronicle* on March 5, 1992 ... and any other documentation showing whether or not the ad was part of a nationwide campaign, and whether or not it was 'mere coincidence' that the ad appeared during jury deliberation."

In response, Relator filed a mandamus proceeding in this court against Judge Wood, requesting relief from that discovery order. Subsequently, Judge Wood withdrew the disputed discovery order, but later entered orders holding Relator in contempt in the six consolidated *Orsak* cases for "communication attempted with the jurors during their deliberations on the verdict ... by placing or causing to be placed in the *Houston Chronicle* the advertisement of March 5, 1992." Relators were fined a total of $3,000.00 for this offense, and petitioned this court for mandamus relief from the contempt order. We denied relief in that case without elaboration.

At some point during these proceedings, Williams filed, on behalf of the plaintiffs in the Master Asbestos File, a second Motion for Additional Discovery intrinsically identical to the discovery motion set out above. This motion was filed with Respondent, Judge Wittig, and sought information concerning Relator's motivations behind placing the ad, the costs of the ad, and other information about its placement, and the placement of similar ads throughout the U.S. This second Motion for Additional Discovery was made *after* the *Orsak* verdict was received, and is in no way related to that case. Nor was it directed at any current ad placed in the context of an actual trial. Rather, this discovery motion was filed for the purpose of generating additional information for other pending cases in the Master Asbestos File.

Relator once more objected on First Amendment and relevancy grounds, as well as harassment and privilege grounds. Plaintiffs insisted such information was relevant to the punitive damages issue in the concerned cases. Respondent ordered Relator to answer the discovery requests and submit the answers to him for an *in camera* inspection to determine the validity of Relator's complaints. Following this inspection, Respondent entered an order requiring Relator to produce the requested information, which resulted in Respondent's filing of this original proceeding for mandamus.

■ To establish entitlement to mandamus relief, a party must show that the trial court clearly abused its discretion in that the trial court could reasonably have reached only one decision. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). Relator must also show lack of an adequate appellate remedy. *Id.* at 840.

■ First, Relator's lack of an adequate appellate remedy is reasonably clear in a discovery case such as this one. Once privileged information has been disclosed to the opposing party, there is no way to retrieve that data and protect its confidentiality. *Walker* at 843, *citing West v. Solito*, 563 S.W.2d 240 (Tex.1978) and *Automatic Drilling Machines v. Miller*, 515 S.W.2d 256 (Tex.1974). After the information has been inspected by the trial judge and ordered to be delivered to the party seeking discovery, a holding by an appellate court that the trial court had erroneously issued that order would be futile in regard to the protection of that data by the opposing party. *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434, 439 (Tex.1959). We therefore find that, absent mandamus relief, Relator would have no adequate remedy by appeal.

The more critical issue is whether Respondent abused his discretion by issuing an order requiring Relator to produce various information concerning the *Houston Chronicle* advertisement and other similar ads placed throughout the United States. Relator asserts two main arguments in its petition for Writ of Mandamus: that the information sought by plaintiffs is constitutionally protected speech under the First Amendment of the U.S. Constitution and

like provisions of the Texas Constitution, and; that the discovery requests facts which are not relevant to any issue in any underlying lawsuits in the Master Asbestos File. While the constitutional argument advanced by Relator is an intriguing one, we will save that question for another day, because the issue of relevance in a discovery context is, in our opinion, dispositive of the entire matter.

TEX.R.CIV.P. 166b(2)(a) provides in pertinent part:

> Parties may obtain discovery regarding any matter which is relevant to the subject matter in the pending action whether it relates to the claim or defense of any other party. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence ...

The Master Asbestos File plaintiffs in the underlying litigation allege that the information regarding the motivations behind placing the ad in the *Houston Chronicle* and other publications is material to the punitive damages issues in those cases, as it is illustrative of Relator's conscious indifference to the plight of those plaintiffs suffering from asbestosis. Plaintiffs also contend that the placing of the ad by Relator constitutes a "continuing course of conduct" for which Relator may be held accountable through exemplary damages in the lawsuits in the master file. Apparently, Respondent agreed with plaintiffs, as is illustrated by his order requiring Relator to produce this information. We disagree.

In personal injury lawsuits arising out of alleged injuries sustained by exposure to asbestos, plaintiffs generally file either a personal injury petition, or a claim based on wrongful death. All of the petitions in the master file make claims somehow based on individual injuries or deaths allegedly due to the harmful effects of exposure to asbestos, and are grounded on theories of negligence, gross negligence, civil conspiracy, products liability, and *res ipsa loquitur.* Hence, plaintiffs' claims seek both compensatory and punitive damages.

The advertisement published in the *Houston Chronicle* denounced the wastefulness of asbestos litigation, excessive attorneys' fees, and opined that Relator had already paid millions to successful plaintiffs. The publication contained no statements about particular lawsuits, nor did it assert that asbestos was not harmful and should continue to be used. It merely related the rather strong opinion of Relator's president on what he felt to be a growing problem in our legal system.

While Respondent and plaintiffs have a legitimate concern that such advertising campaigns published during, or shortly before, an actual trial may have an enormous effect on jury deliberations and the sanctity of the judicial process, there are judicial methods of dealing with such acts, including contempt buttressed by appropriate discovery. However, general pre-trial *discovery* of the motivations behind these ads is not within the ambit of the present circumstances. The motivation behind, and the costs of, the advertisement for use in future litigation is completely unrelated to whether Relator was negligent, grossly negligent, or consciously indifferent with regard to the exposure of plaintiffs to the harmful effects of asbestos. Nor would a similar contrary advertisement by an association of plaintiffs or trial lawyers be relevant or subject to discovery in the lawsuits under the circumstances before us.

Nor is the placing of the ad a relevant trial issue on Relator's "continuing course of conduct" as alleged by counsel for Respondent in oral argument. We are simply hard-pressed to find how the reasons underlying the ad campaign are relevant to its conduct or omissions in connection with the exposure of plaintiffs to asbestos. The jurors will be called on to judge Relator's conduct and, if warranted, to assess punitive damages therefor. But the jury will not be entitled to punish Relator for its opinions as to the high cost of litigation expressed in the public media as a paid advertisement. The ad simply expresses an opinion about the increasing costs of asbestos-related litigation and Relator's strongly-held belief that it is wasteful. Re-

lator's president had every right under the federal and state constitutions to express the opinion via the advertisement. . Likewise, organizations representing plaintiffs have the same right to publish their opinions. It is only where such ads are placed in close proximity to actual trials that they may be subjected to judicial scrutiny and possible action. But such scrutiny is to protect and insure fairness in the judicial process and not to make such ads a part of the issues on trial.

We understand Respondent's and plaintiffs' concerns that the motives behind placing the advertisement may be questionable, and we do not condone any attempts by any party to interfere with one of the most fundamental aspects of our legal system—jury deliberations. However, discovery motions designed to bring such ads into the trial are not a proper nor constitutional method for punishing inappropriate conduct. If a party has a valid complaint that an opposing party is guilty of attempting to influence a jury, the proper remedy is to seek judicial remedies such as contempt, injunctive relief, or other appropriate sanctions against any responsible party.

It follows, then, that our holding today concerns a different issue than the mandamus proceeding Relator initiated against Judge Wood in response to her order holding Relator in contempt for attempting to influence jury deliberations. That situation dealt with the authority of a trial judge to protect the integrity of trial proceedings. The penalties imposed in that proceeding dealt with Relator's actions which Judge Wood found was an attempted communication with the jurors during their deliberations on the verdict. The order did not compel discovery. In fact, as previously noted, Judge Wood withdrew her initial order which sought the production of similar information made the subject of this proceeding. The appropriate limits of a discovery order under such circumstances is not before us.

Litigants are thus not without potential legal tools to protect the integrity of the trial. In proper circumstances, they may utilize voir dire to deal with potentially prejudicial influences that are initiated outside the courtroom. *See Babcock v. Northwest Memorial Hosp.*, 767 S.W.2d 705, 709 (Tex.1989). And, as previously noted, presiding judges have the authority to penalize any litigant through contempt orders and other procedures, should they determine that the jury process is threatened. However, our holding in this proceeding is simply that the discovery sought by plaintiffs regarding the advertisement and the motives behind it are not relevant to the actual issues to be litigated in the underlying master file lawsuits. We find, therefore, that the order mandating compliance with plaintiffs' discovery request is violative of the purposes of TEX.R.CIV.P. 166b(2)(a). We find that Respondent clearly abused his discretion in issuing the order requiring Relator to respond to the discovery, as he could have reasonably reached only one decision: that the information sought was not relevant to any issue raised in the underlying lawsuits.

Accordingly, we conditionally grant Relator's petition for Writ of Mandamus, and direct Respondent to vacate his order of February 3, 1993. We presume Respondent will comply. Mandamus will issue only should he fail to do so.

RELIEF GRANTED.