**In re Billy Wayne PERRITT and Ann Perritt, Jointly d/b/a Golden Corral Family Steakhouse No. 348.**

**No. 06–98–00102–CV.**

Court of Appeals of Texas, Texarkana.

Submitted July 21, 1998.

Decided July 22, 1998.

777

John Holman Barr, Burt Barr & Associates, L.L.P., Dallas, Deanya T. Kueckelhan, Bonham, for Relator Ann Perritt.

Mark Clyde Burgess, Crisp Jordan Boyd Llp, Texarkana, for Relator Billy Perritt and Ann Perritt.

Lynn A. Grisham, Waltman & Associates, Bryan, David C. Turner, Jr., Turner, Meehan, Porter, Bonham, John R. Mercy, Atchley, Russell, Waldrop, Texarkana, for Real Parties in Interest Betty Barker, et al.

John B. Gessner, Gessner & Flores, for Real Parties Golden Corral Corporation.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

This original proceeding arises from a case of alleged food contamination that is pending in the 6th District Court of Fannin County. Relators, Billy Wayne Perritt and Ann Perritt, doing business as Golden Corral Family

Steakhouse No. 348, are defendants in that action and have petitioned this Court for a writ of mandamus ordering the respondent judge, Honorable Jim D. Lovett, to allow them to place an advertisement in a newspaper and to allow them to contact people who participated in a joint study conducted by the Texas Department of Health and the Center for Disease Control (TDH/CDC). These relators also sought and received from this Court an emergency stay of all proceedings in the trial court, pending disposition of their petition for mandamus relief. Golden Corral Corporation and Golden Corral Franchising Systems, Inc. have filed a response by which they join the Perritts in seeking mandamus relief. Plaintiffs in the trial court are the real parties in interest and have filed a response opposing relators' petition.

Judge Lovett obtained leave of this Court to file findings of fact and conclusions of law. He deemed such findings and conclusions necessary to complete the record and for a proper determination of the issues. The Perritts complain that our order granting leave was entered prematurely and in violation of TEX.R.APP. P. 10.3(a). We granted such leave promptly because of the emergency stay of all proceedings we had entered pursuant to relators' request. Further, relators had recourse, which they timely utilized, by way of TEX.R.APP. P. 10.3(b) providing that: "[i]f a motion is determined prematurely, any party adversely affected may request the court to reconsider its order." We have considered relators' motion to reconsider, as well as their motions to strike and to disregard the findings of fact and conclusions of law, and have determined to deny the relief sought in such motions.

Relators cite TEX.R. CIV. P. 296 to support their position that the trial judge's findings and conclusions are improper because no party requested them. However, in *IKB Indus. v. Pro–Line Corp.*, 938 S.W.2d 440 (Tex.1997), cited by relators in their motion to disregard, the Texas Supreme Court stated:

The purpose of Rule 296 is to give a party a right to findings of fact and conclusions of law finally adjudicated after a conventional trial on the merits before the court. *In other cases findings and conclusions are proper,* but a party is not entitled to them.

*Id.* at 442 (emphasis added).

Judge Lovett, as the person against whom relief is sought, is the respondent and a party to this proceeding. TEX.R.APP. P. 52.2. In making his findings and conclusions, he was engaging in a practice which the Texas Supreme Court has commended to our trial courts and has recognized as potentially helpful in determining that the trial court exercised its discretion in a reasonable and principled fashion. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 919 n. 9 (Tex.1991). And while we recognize that we are not obliged to give them the same level of deference as findings made pursuant to Rule 296 [1] and recognize that his legal conclusions are not binding upon this Court, we do consider his findings and conclusions helpful to our determination of the issues.[2] Relators' motion to reconsider, motion to strike, and motion to disregard are overruled.

*BACKGROUND*

The real parties in interest filed suit in Fannin County on January 16, 1997, claiming that in the spring and summer of 1996 they were injured by contracting chronic diarrhea from food served at a Golden Corral restaurant in Bonham, Texas. Trial was set to begin April 3, 1998, but on February 27, 1998, relators were granted a continuance, and the trial date was reset for August 7, 1998.

On April 17, 1998, relators filed a motion to transfer venue based upon widespread publicity in local newspapers, contending that the publicity prevented them from obtaining a fair and impartial trial. Judge Lovett overruled the motion on May 22, 1998, but stated that he would reconsider the issue at the time of jury selection if it appeared at

---

1. *IKB Indus. v. Pro–Line Corp.,* 938 S.W.2d 440, 442 (Tex.1997); *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 852 (Tex.1992).

2. It should be noted that this Court has, in the past, specifically requested findings of fact and conclusions of law from the trial court in similar proceedings.

that time that a fair and impartial trial could not be had.

On May 12, 1998, relators filed a motion asking for production of the TDH/CDC study concerning the diarrhea outbreak in Bonham. On May 28, Judge Lovett granted the motion and ordered the Texas Department of Health to produce unredacted copies of both the study and the underlying data. The judge also ordered the parties not to contact the participants in the study, but indicated that he would allow contact if relators could demonstrate that the study was in some way methodologically flawed. Relator Ann Perritt sought permission from the court to advertise in the local newspaper for persons who suffered from chronic diarrhea. This request was denied.

By this mandamus proceeding, relators seek relief from Judge Lovett's order prohibiting them from contacting the participants in the TDH/CDC study and his order denying permission to advertise in the newspaper.

## MANDAMUS ON ORAL OR WRITTEN ORDERS

■ We note first that, in connection with the request to advertise in the newspaper, there is no written order directing relators *not* to so advertise. The order prohibiting this conduct was made orally. There is a written order dated June 3, 1998, "Denying Defendant's Motion for Relief from 'Gag Order' and for Clarification." The motion antecedent to that order asks the court to reconsider its oral ruling that advertisements could not be used to attempt to contact nonparties who suffered from chronic diarrhea.

A written order dated June 4, 1998, orders relators (and the plaintiffs) not to contact any of the individuals who participated in the TDH/CDC survey. That directive was made

when the judge ordered the Texas Department of Health to produce the survey and underlying data, including interviews and surveys. The court's order denying permission to contact the interviewees is based upon statutes guaranteeing confidentiality for participants in such surveys.[3]

Whether we may grant mandamus relief solely on an oral order is a matter decided differently by different courts. In *Woods v. Alvarez*, 925 S.W.2d 119, 121 (Tex.App.—Corpus Christi, orig. proceeding), *rev'd on other grounds*, 929 S.W.2d 440 (Tex.1996),[4] and *State ex rel. Skeen v. Tunnell*, 768 S.W.2d 765 (Tex.App.—Tyler 1989, orig. proceeding), the courts used oral pronouncements as proven by a reporter's record as the basis for a grant of mandamus relief. *Contra Frink v. Blackstock*, 813 S.W.2d 602, 605 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding) (O'Connor, J., dissenting) (noting that, in the past, the court had granted mandamus on an oral order when the party had provided a transcript of the hearing where the order was pronounced).[5]

All these cases however, are based upon an interpretation of *former* TEX.R.APP. P. 121(a)(2)(C) (Vernon 1997), which explicitly required the petition to "be accompanied by a certified or sworn copy of the order complained of. . . ." The new rule reads differently. TEX.R.APP. P. 52.3(j)(1)(A) provides that the petition must contain, within its appendix, "a certified or sworn copy of any order complained of, or any other document showing the matter complained of; . . . ."

Under this new version of the rule, it seems clear that if a court's ruling is adequately shown by the reporter's record, then a formal written order is now unnecessary. Therefore, we find the combination of oral and written orders in this case sufficient to

3. TEX. HEALTH & SAFETY CODE ANN. § 81.046(c) (Vernon 1992) explicitly provides that epidemiological information may only be released for statistical purposes if released in a manner that prevents the identification of any person, or with their consent. In this case, the trial court ordered disclosure of names based on a perceived need in discovery, but ordered the defendants not to contact those disclosed individuals. *See also* TEX. HEALTH & SAFETY CODE ANN. § 161.0211–.0213 (Vernon Supp.1998).

4. The ruling on the merits in this mandamus was reversed later by the Texas Supreme Court, but without mention of the necessity of a written order.

5. *See also Davenport v. Garcia*, 837 S.W.2d 73 (Tex.1992). In that short order that is the precursor to the full opinion cited above, the Texas Supreme Court granted a writ of mandamus in part ordering the trial court to vacate its oral "gag order."

place before us the complaints made the basis of relators' petition for writ of mandamus.

*STANDARD OF REVIEW*

 Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion or the violation of a duty imposed by law, and (2) the absence of a clear and adequate remedy at law. *Cantu v. Longoria*, 878 S.W.2d 131, 132 (Tex.1994); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or, in the absence of another statutory remedy, when the trial court fails to observe a mandatory statutory provision conferring a right or forbidding a particular action. *Abor v. Black*, 695 S.W.2d 564, 567 (Tex.1985).

 With respect to the resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990). The relator must establish that the trial court could reasonably have reached only one decision. *Walker*, 827 S.W.2d at 840. Review of a trial court's determination of legal principles controlling its ruling applies a much less deferential standard, since the trial court has no discretion in determining what the law is or applying the law to those facts.

 Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling, because a trial court has no discretion in determining what the law is or in applying the law to the facts. *See id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *Id.*

"A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex.1996); *Walker*, 827 S.W.2d at 840. Consequently, the trial court's errone-

ous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *Huie*, 922 S.W.2d at 927–28.

*RELATORS' ARGUMENTS*

Relators argue for relief on two fronts. Their first argument, based on constitutional principles, is that the court abused its discretion in prohibiting them from placing the newspaper advertisement. Second, they argue that the court abused its discretion in refusing to permit them to contact or interview the individuals whose names appeared in the TDH/CDC study.

The first question is not whether relators had to ask for permission to place the newspaper advertisement.[6] Ann Perritt chose to do so, and the trial court refused permission. The issue is therefore whether the trial court had the power to restrict relators from placing the advertisement in the local newspaper.

Relators contend that the court's order constitutes a restriction on their exercise of the right of free speech under the United States and Texas Constitutions. A series of Texas cases have consistently described the Texas guarantee of free speech as broader than the provision found in the Bill of Rights of the United States Constitution. *See generally Davenport v. Garcia*, 834 S.W.2d 4, 9–10 (Tex.1992). In *Davenport*, the trial court ordered an ad litem attorney not to discuss or publish anything concerning the facts of the case or conduct of counsel or to "discuss the case with anyone." *Id.* at 6. If counsel had done so, she would have risked being held in contempt. The Texas Supreme Court labeled this order a "gag order" and held that a prior restraint:

> will withstand constitutional scrutiny only where there are specific findings supported by evidence that (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm.

*Id.* at 10.

This analysis was applied in *Low v. King*, 867 S.W.2d 141 (Tex.App.—Beaumont 1993,

---

6. In connection with that question, we have been unable to find any case, statute, or rule requiring a party to ask for such permission.

orig. proceeding), where a divided court[7] looked at an order entered at the request of a defendant prohibiting the plaintiff from running advertisements seeking witnesses in a local paper. The Beaumont court applied *Davenport* and found that no "imminent, severe harm" to the judicial process was shown, and directed the trial judge to withdraw the protective orders.

In the other case involving advertising, *Keene Corp. v. Wittig*, 855 S.W.2d 280 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding), a party took out advertisements in the *Houston Chronicle* during the midst of jury deliberations which contained, among other things, "strong statements of opinion by the president of the Relator company regarding the wastefulness of asbestos-related lawsuits, exorbitant legal fees, and the large awards Relator had paid to many successful plaintiffs." The trial judge ordered the party to produce all information about the ad campaign so that he could determine whether it was aimed at damaging the deliberations in the lawsuit or whether it was a part of a long-standing campaign. The court of appeals noted that such ad campaigns might have an enormous effect on jury deliberations and recognized that there are other ways of dealing with such acts, including contempt.

## TRIAL COURT'S FINDINGS AND CONCLUSIONS

Judge Lovett's findings of fact and conclusions of law set out the reasons for his rulings. He found that the reason for the relief sought was to find a back-door method of obtaining a previously denied continuance and to prejudice the jury pool in a further attempt to secure a change of venue; that advertising as proposed is potentially prejudicial and unacceptable; that there are other methods that could have been used (or had already been used); that relators did not show any necessity for advertising or that they had sought to obtain the information through other procedures; and that the defendants (relators) had provided no evidence that standard discovery methods were inadequate.

He also found that the statutory privilege of confidentiality granted to the participants in the TDH/CDC survey should be protected unless error could be demonstrated in the study, and found that he granted access to the raw data underlying the survey so that the relators could review the conclusions of the TDH/CDC study. The trial judge further stated that if some form of error was shown, he would take further action toward permitting the defense to interview the protected participants.

## ANALYSIS

■ We first address the question of whether the trial judge abused his discretion by directing relators not to purchase the newspaper advertising. If relators (or any other party) had purchased such advertising earlier in the proceeding, at a time when it would not jeopardize the trial setting or otherwise unduly interfere with the orderly progress of the case, an order prohibiting such advertising might very well have been an abuse of discretion. However, under our rules of procedure, the trial judge is vested with general control and supervision of the discovery process and scheduling. Since relators waited until after the first trial setting and a mere eleven weeks before the new trial setting to seek such discovery, we cannot say the trial judge abused his discretion in disallowing it.

The imminent and irreparable harm to the judicial process is shown by the damage that would be caused to the court's effort to timely schedule and bring to completion this litigation that is proceeding pursuant to TEX.R. CIV. P. 174 as a consolidation of complex cases. The requested advertisement is potentially the mere tip of the iceberg. After advertising there must be time for responses; then time for interviews; then time for collation of data; then time for analysis of data; then time for reports to be written and disseminated; then time for depositions of the expert(s) who created the reports. We are convinced that the potential delay that would be caused by allowing this advertisement at this stage of the proceedings would no doubt constitute an "irreparable harm to the judicial process." We decline to mandamus the

---

7. The opinion contains a lead opinion, a concurrence, and a dissent.

trial judge to allow this kind of discovery that could and should have been obtained much earlier in the process.

■ Relators also complain because the trial judge refused to permit them to interview the persons who were part of the TDH/CDC study. Initially, the trial court, in accordance with two separate statutes, refused to even permit them to have the names of those individuals or any other details about the raw data underlying the study. The court altered its position and provided the raw data under a confidentiality order, but refused to permit the relators to contact those individuals.

The trial judge stated that if relators could show flaws in the study, then he would consider allowing them to contact the individuals. Relators argue that this denies them the ability to challenge the TDH/CDC study. Relators apparently feel that the interviews in this study were not properly conducted. They state in their petition, "Further, the Court's requirement prohibits Defendants from questioning participants about matters that may have severely biased the entire survey."

As set out by the trial court, however, the question is, based upon the basic information obtained by the TDH/CDC, whether those agencies' conclusions and analyses were inadequately or inaccurately made. If some showing is made that the data was inadequate for any reason, then that would impact the eventual analysis of that data. None has been made so far, and no concrete allegations of error in analysis have been made. In fact, if such a claim is to be made, it would probably be at the hearing on expert testimony that is presently delayed by the stay order issued in this mandamus proceeding. Based on the record before us, we see no justification for holding that the trial judge abused his discretion in denying this access. Indeed, it appears that he made a diligent effort to provide the underlying data for the study while protecting the confidentiality of its participants. It is arguable that not even the names of the participants in the study should have been released because the statute clearly provides for absolute confidentiality. Nevertheless, by the order complained

of, the trial judge attempted to balance relators' need for information contained in the study (leaving open the possibility of ordering further discovery, upon a proper showing) with the confidentiality of the study's participants, as mandated by the statute. We cannot say that he abused his discretion in these orders.

*CONCLUSION*

The petition for writ of mandamus is denied, and the stay of proceedings in the trial court is hereby set aside.