COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NOS. 2-02-312-CV
2-02-313-CV

 
SHANNON EMILY PARKER                                                    APPELLANTS
AND KELLI PARKER
V.
 
CHRISTY LYNN PARKER                                                         APPELLEES
AND ROBERT CLINTON PARKER
------------
 
FROM PROBATE COURT NO. 1 OF 
TARRANT COUNTY
 
------------
 
OPINION ON REHEARING
 
------------
I. Introduction
        After 
reviewing appellants’ motion for rehearing, we deny the motion, withdraw our 
August 14, 2003 opinion and judgment, and substitute the following in their 
place.
        Appellants 
Shannon Emily Parker and Kelli Parker appeal from the probate court’s denial 
of their motions for summary judgment and the court’s corresponding ruling 
granting appellees Christy Lynn Parker and Robert Clinton Parker’s motions for 
partial summary judgment. In three issues, appellants complain that the probate 
judge was without power to rule upon the parties’ summary judgment motions due 
to a previous oral recusal and that if the probate judge possessed such power, 
he erred by denying appellants’ motions and granting appellees’ motions. We 
affirm.
II. Factual and Procedural History
        These 
are companion cases dealing with the disposition of the estates of Charles F. 
Roeser (“Roeser”) and Maxine Shannon Pavelic (“Pavelic”), respectively. 
The cases involve the construction of Roeser’s and Pavelic’s wills and 
whether or not adopted great-grandchildren are eligible beneficiaries of 
testamentary trusts created under them.
        On 
July 27, 1999, Chase Bank of Texas (“Chase”), acting as trustee of the 
trusts created under the respective wills of Roeser and Pavelic, filed an 
“Original Petition for Declaratory Judgment” under two cause numbers in 
Probate Court Number One of Tarrant County.[1]  
Chase sought a declaration in each case construing the terms of the testamentary 
trusts created under the respective wills and a determination of the interested 
parties’ rights under those trusts. The interested parties named by Chase who 
are now parties to this appeal include appellants, the biological daughters of 
Emily Roeser Parker and grandchildren of Roeser and Pavelic, and appellees, the 
adopted children of Earle Whitney Parker, Emily Roeser Parker’s son, and 
adopted great-grandchildren of Roeser and Pavelic.
        Appellants 
and a third sibling, Patrick Allison Parker,[2]  
answered Chase’s petitions and asserted cross-claims against appellees 
alleging that appellees possessed no rights to the trusts created under the 
Roeser and Pavelic wills because of their status as adopted children. Appellants 
requested a judicial declaration that appellees have no interest in either 
estate. On May 12, 2000, appellees answered and filed counterpetitions for 
declaratory judgment, in which they argued that the probate court should, as a 
matter of law, “construe the language of the Decedent’s Will in such a way 
as to treat all heirs of Decedent’s children the same, whether such heirs are 
adopted or not.” On the same day, appellees also filed motions for partial 
summary judgment requesting the court to hold that the Pavelic trusts did not 
exclude adopted great-grandchildren.
        Thereafter, 
appellants filed motions for summary judgment on their cross-claims against 
appellees, asserting that summary judgment evidence presented by appellants 
proved as a matter of law that appellees possessed no interest in either estate 
and that there was no evidence either Roeser or Pavelic intended for adopted 
great-grandchildren to inherit under the terms of their wills. The evidence 
attached to appellants’ motions for summary judgment includes: Pavelic’s 
October 15, 1971 will, an October 31, 1971 handwritten codicil to Pavelic’s 
will, a March 25, 1977 second codicil to Pavelic’s will, a July 6, 1978 third 
codicil to Pavelic’s will, Roeser’s February 19, 1947 will, a February 19, 
1947 first codicil to Roeser’s will, and a February 4, 1949 second codicil to 
Roeser’s will, all of which bear the seal of the County Clerk of Tarrant 
County, Texas.
        With 
the competing summary judgment motions pending before the probate court, the 
parties set forth the following agreed stipulation of facts regarding the estate 
of Roeser, which is part of the clerk’s record:
 
Charles F. Roeser (hereafter 
Decedent) died in 1949. His probated Will consisted, collectively, of a 1947 
will and 1947 and 1948 codicils. Item Four of the Will created three trusts, one 
for the Decedent’s wife, Maxine Shannon Roeser, and one for each of his two 
daughters, Emily and Ellen. The Will provided that if the Decedent’s wife 
failed to appoint those to whom the remaining assets of the trust for her 
benefit should pass at her death, then that trust is to continue for a period of 
20 years following the death of the survivor of Emily and Ellen. The trusts for 
the benefit of the daughters likewise continue until 20 years following the 
death of the survivor of the two. The Decedent’s wife died in 1983 without 
exercising the power of appointment granted her under Item Four of the Will. 
Decedent’s daughter Emily Roeser Parker died in 1987. Decedent’s daughter 
Ellen Roeser is still living.
 
Under the Will’s provisions 
for distributions of trust income, and ultimately of trust corpus, as it relates 
to all three trusts, the Decedent’s grandchildren are beneficiaries or 
contingent beneficiaries. A deceased grandchild’s beneficial interest passes 
to the deceased grandchild’s children or their heirs. The Will uses the 
language “children born of her body”—Emily’s body or Ellen’s body—to 
describe the class of grandchildren beneficiaries. It uses the word[s] “the 
children, and their heirs, of any deceased child of her body to be entitled to 
their parent’s portion per stirpes” to describe the class of beneficiaries 
who may take through a deceased grandchild. The Will does not define 
“children,” neither does it contain any provision explicitly including or 
excluding adopted children from the class of beneficiaries who may take through 
a deceased grandchild. The Decedent’s grandchildren include Earle Whitney 
Parker, who died in 1998. Earle Whitney Parker was the adoptive parent of two 
children, Christy Lynn Parker and Robert Clinton Parker.
 
        An 
agreed stipulation of facts was also filed in the companion case regarding the 
estate of Pavelic, Roeser’s wife, which states:
Maxine Shannon Pavelic 
(hereafter Decedent) died in 1983. Her probated Will consisted, collectively, of 
a 1971 will with 1977 and 1978 codicils. Article Four of the Will created a 
trust from her residuary estate, to be divided into equal and separate 
shares/trusts for each of her grandchildren. Article Four defined 
“grandchildren” as “child or children born (including those hereafter 
born) to” the Decedent’s daughters by her marriage to Charles Roeser, Emily 
and Ellen. Article Four provides for distributions during the trust’s 
existence and for distribution of its remaining assets upon termination of the 
trust. Under Article Four, a deceased grandchild’s beneficial interest passes 
to his “descendant” or “descendants,” per stirpes. Article Five of the 
Will, which states that its provisions apply to every trust created by the will, 
except as otherwise provided in the Will, provides that “'descendants' and 
'descendant' as used in this will, designate the lawful issue of a deceased 
person in the line of descent.” The Decedent’s grandchildren include 
Emily’s son Earle Whitney Parker, who died in 1998. Earle Whitney Parker was 
the adoptive parent of Christy Lynn Parker and Robert Clinton Parker.
 
The Will, under Article 
Three-A, also created a trust for the benefit of the Decedent’s husband, Ante 
Pavelic. Her husband’s trust was to terminate upon his death and its assets to 
pass to the trustee of the grandchildren’s trust “to be held, administered 
and distributed pursuant to the terms of Article Four of My Will, if such trust 
is then in existence.” If the grandchildren’s trust was not “then in 
existence,” Section 3 of Article Three-A provided that the assets of the 
husband’s trust were to “pass free of trust to my daughters and their 
descendants, per stirpes. [The word ‘descendants’ as used in this Section 
shall mean any natural born child or children in the line of descent of a 
deceased parent.]” When Ante Smith Pavelic died, the trust created by Article 
Four of the Decedent’s Will was still in existence.
        After 
fourteen months without a ruling by the probate court on the parties’ 
respective motions for summary judgment, counsel for appellants filed a petition 
for writ of mandamus in this court for each case. In re Parker, Nos. 
02-01-280-CV, 02-01-281-CV (Tex. App.—Fort Worth Sept. 14, 2001) (orig. 
proceeding) (not designated for publication). This action apparently evoked an 
oral announcement of recusal from the probate judge, but no recusal order was 
signed. A few days later, the probate judge sent a letter to the attorneys of 
record retracting his recusal and ruling on the parties’ motions. On October 
11 and 12, 2001, the probate court signed orders granting appellees’ motions 
for partial summary judgment in each case and denying appellants’ 
corresponding motions for summary judgment.
III. The Probate Judge’s Alleged Announcement of Recusal
        In 
their first issue, appellants complain that the October 11 and 12, 2001 orders, 
which denied appellants’ motions for summary judgment and granted appellees’ 
motions for partial summary judgment, are void because the orders were signed by 
the judge after he orally recused himself from the case. Appellees contend, on 
the other hand, that the oral announcement referred to by appellants, which was 
delivered to appellants’ counsel by voicemail, is not a part of the appellate 
record and stress that no formal order of recusal was ever signed by the probate 
judge.
        Rule 
18b of the Texas Rules of Civil Procedure sets forth the grounds for 
disqualification and recusal of judges. Tex. 
R. Civ. P. 18b. The provision states, in relevant part:
 
(2) Recusal
 
A judge shall recuse himself 
in any proceeding in which:
 
(a) his impartiality might 
reasonably be questioned;
 
(b) he has a personal bias or 
prejudice concerning the subject matter or a party, or personal knowledge of 
disputed evidentiary facts concerning the proceeding.

Tex. R. Civ. P. 18b(2)(a)-(b). The rule 
further provides that “[t]he parties to a proceeding may waive any ground for 
recusal after it is fully disclosed on the record.” Tex. R. Civ. P. 18b(5). Rule 18a(c) 
states:
  
If the judge recuses himself, 
he shall enter an order of recusal and request the presiding judge of the 
administrative judicial district to assign another judge to sit, and shall make 
no further orders and shall take no further action in the case except for good 
cause stated in the order in which such action is taken.

Tex. R. Civ. P. 18a(c).
        Appellants 
assert that the probate judge orally recused himself in a recorded voicemail 
message sent to appellants’ counsel on September 5, 2001, the same day that 
appellants filed petitions for writ of mandamus in an effort to compel the 
probate judge to issue a ruling on the parties’ competing summary judgment 
motions. The text of that voicemail message was included in the appendices of 
appellants’ supplemental mandamus petitions and is quoted in appellants’ 
briefs in their direct appeals. In addition, a tape recording of the message, 
sworn to by appellants’ counsel, was tendered with the mandamus records. While 
we recognize that this court may take judicial notice of its records in the 
mandamus proceedings,[3]  either the text of the 
message or the tape recording must also have been made a part of the trial court 
record.[4]  Tex. R. App. P. 52.3(j)(1)(A), (2), 
52.7(a)(1) (requiring documents submitted with original proceeding to have been 
filed in the underlying proceeding); In re Houseman, 66 S.W.3d 368, 373 
(Tex. App.—Beaumont 2001, orig. proceeding). Appellants never attempted to 
offer either the recording or the text of the message into evidence at the trial 
court, and neither is included in the trial court record.[5]  
Thus, we would not have been able to consider them in the mandamus proceedings 
because they were not filed in the underlying proceeding. Tex. R. App. P. 52.7(a)(1); see 
Humphreys v. Caldwell, 881 S.W.2d 940, 943 (Tex. App.—Corpus Christi 1994, 
orig. proceeding) (refusing to consider, under predecessor to rule 52.7(a)(1), 
copies of exhibits filed in original proceeding because affidavit accompanying 
copies stated that some had been filed with trial court and some had been sent 
to opposing counsel and did not identify which had been filed with trial court), 
mand. granted in part on other grounds, 888 S.W.2d 469 (Tex. 1994); cf. 
In re Bledsoe, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. 
proceeding) (holding that oral order of trial court may be considered in 
mandamus action if it is adequately shown by the trial court record); In 
re Perritt, 973 S.W.2d 776, 779 (Tex. App.—Texarkana 1998, orig. 
proceeding) (holding that appellate court may consider oral ruling of trial 
court in mandamus action if it is adequately shown by the reporter’s record). 
Accordingly, we will not review the content of the probate judge’s statement 
to appellants’ counsel.
        Other 
evidence contained in the trial court record, however, confirms that the probate 
judge did make an oral statement recusing himself from this case before ruling 
on the parties’ motions for summary judgment. The clerk’s record contains a 
September 10, 2001 letter from the probate judge to the parties’ attorneys, 
which states that “[o]n further consideration, the Court hereby rescinds 
its sua sponte oral recusal of September 5, 2001.” [Emphasis added.] 
Thereafter, the letter sets forth the probate court’s rulings on the 
parties’ summary judgment motions and offers the reasoning behind those 
rulings. Thus, the only evidence in the trial court record reflecting the 
probate judge’s oral recusal also demonstrates that the probate judge 
expressly rescinded his statement before ruling upon the parties’ motions. 
Furthermore, the trial court record does not reflect that the probate judge 
entered an order of recusal or requested that another judge be assigned to the 
case as required by rule 18a.
        Relying 
upon Dunn v. County of Dallas, appellants claim that the probate 
judge’s oral statement in this case was a clear and unequivocal act of the 
probate court, constituting an irrevocable recusal, and submit that the absence 
of a formal order of recusal had no effect upon the validity of the action. 794 
S.W.2d 560, 562 (Tex. App.—Dallas 1990, no writ). As appellees point out in 
their brief, however, the facts surrounding the probate judge’s recusal in Dunn 
are distinguishable from the present case. In Dunn, the trial judge sent 
a letter to the presiding judge of the administrative district voluntarily 
recusing himself from a case and requesting the assignment of a different judge. 
Id. at 561. Copies of the letter were sent to all attorneys of record. Id. 
No further action was taken on the letter, no order of recusal was entered, and 
the original judge continued to preside over the cause, eventually granting 
summary judgment. Id. On appeal, the Dunn court held that the 
trial judge’s letter was a valid and effective order of recusal, which 
divested the trial judge of the power to enter the summary judgment. Id. 
at 562-63. The court specifically pointed out that “[n]o other order 
rescinding, modifying, or otherwise changing this recusal order is in the 
record.” Id.
        In 
the present case, on the other hand, the sole evidence in the trial court record 
that any act of recusal occurred is inextricably combined with an express 
statement by the probate judge rescinding that action. Nothing in the trial 
court record suggests that appellants objected to the probate judge’s 
rescission of his oral recusal. In addition, the trial court record contains no 
written motion for recusal, which appellants could conceivably have filed 
following receipt of the probate judge’s September 10 letter. See Tex. R. Civ. P. 18a(a) (authorizing 
“any party” to file a motion stating reasons why the judge before whom a 
case is pending should be removed). Moreover, our examination of the trial court 
record reveals no facts indicating bias, prejudice, or any other cause to 
reasonably question the impartiality of the probate judge in this case. Because 
the probate judge affirmatively retracted his oral recusal and appellants took 
no steps to secure his subsequent removal from the case pursuant to rule 18a, we 
hold that appellants have waived the issue of recusal on appeal. See In re 
Union Pac. Res. Co., 969 S.W.2d 427, 428 (Tex. 1998) (orig. proceeding) 
(recognizing that, unlike constitutional grounds for disqualification, grounds 
for recusal of a trial judge can be waived if not raised by proper motion). 
Accordingly, we overrule appellants’ first issue.
IV. Propriety of Summary Judgment for Adopted 
Great-Grandchildren
        In 
their second and third issues, appellants complain that the trial court erred by 
granting appellees’ motions for partial summary judgment and denying 
appellants' motions for summary judgment. Appellants argue that the language of 
the Roeser and Pavelic trusts shows an intent to exclude adopted 
great-grandchildren as beneficiaries. Appellees argue, however, that the trusts 
clearly show an intent to include them as beneficiaries.
        Questions 
of law are appropriate matters for summary judgment. Rhone-Poulenc, Inc. v. 
Steel, 997 S.W.2d 217, 222 (Tex. 1999). Absent ambiguity, the construction 
of a will is a matter of law. Penland v. Agnich, 940 S.W.2d 324, 326 
(Tex. App.—Dallas 1997, writ denied). We review such questions of law de novo. 
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). Here, both 
parties agree that the will is unambiguous, as evidenced by their opposing 
motions for summary judgment. See Sharp v. Broadway Nat'l Bank, 
761 S.W.2d 141, 144 (Tex. App.—San Antonio 1988), aff'd as modified on 
other grounds, 784 S.W.2d 669 (Tex. 1990) (per curiam).
        When 
both parties move for summary judgment and the trial court grants one motion and 
denies the other, the reviewing court should review both parties’ summary 
judgment evidence and determine all questions presented. Dow Chem. Co. v. 
Bright, 89 S.W.3d 602, 605 (Tex. 2002). The reviewing court should render 
the judgment that the trial court should have rendered.[6]  
Id.
A. Roeser Trusts
        In 
“Codicil No. 1 to Last Will Dated February 19, 1947 of Chas. F. Roeser,” 
Roeser created three separate trusts: one for Pavelic, the second for his 
daughter Emily, and the third for his other daughter Ellen. Roeser created a 
power of appointment in Pavelic’s trust and stated that if she did not name 
and appoint those who should gain the balance of the corpus and undistributed 
income, then the trustee shall pay:
  
[O]ne-half (½) of the net 
income of the trust to my daughter, Emily Roeser, if then living, if not, in 
equal shares, to the children born of her body; the children, and 
their heirs, of any deceased child of her body to be entitled to their 
parent’s portion per stirpes; and if there be none such to take and 
receive the one-half (½) share of the net income of the trust, going to Emily 
Roeser, then her said one-half (½) share in said net income shall go and be 
paid to her sister, Ellen Roeser, if then living, if not, to the children born 
of her body; the children, and their heirs, of any deceased child of her body to 
be entitled to their parent’s portion per stirpes. [Emphasis added.]

The provision creating 
Ellen’s trust contains identical language as Emily’s trust, but where 
“Emily” is used, the name “Ellen” is substituted and vice versa.        Our 
primary inquiry in interpreting a will is to determine the intent of the 
testator. Gee v. Read, 606 S.W.2d 677, 680 (Tex. 1980). If the will 
itself is unambiguous, courts should not go beyond its specific terms in search 
of the testator’s intent. Penland, 940 S.W.2d at 326. We apply the law 
as it existed at the time the will was executed. Id.
        In 
this case, the applicable law was the 1931 adoption statute.[7]  
The law in effect at the time presumed that adopted children do not take under a 
will executed by a third person unless the will discloses a contrary intent. See 
Cutrer v. Cutrer, 345 S.W.2d 513, 516-17 (Tex. 1961). As the supreme court 
in Cutrer made clear, the 1931 adoption statute’s presumption against 
including adopted children applied only if other language or circumstances of 
the will did not indicate a contrary intent. Id. at 515; Penland, 
940 S.W.2d at 326. The key question is not whether adopted persons have a right 
to take under the law, but whom the testator intended to share in his estate. Sharp, 
761 S.W.2d at 144. If Roeser’s trust discloses an intent contrary to the 
presumption of the 1931 adoption statute, that intent controls. The court may 
not “add to, subtract from, amend, correct, reform, revise, or rewrite the 
will even if the court might think that the testator was unreasonable, unjust or 
unwise in bequeathing and devising his property as he did.” Sanderson v. 
First Nat’l Bank, 446 S.W.2d 720, 723 (Tex. Civ. App.—Dallas 1969, writ 
ref’d n.r.e.).
        Here, 
Roeser specifically stated in Emily’s and Ellen’s trusts that “children 
born of her body” were to receive equal shares of the trust. It is well 
settled that such language is construed to exclude adopted persons from 
benefitting under a will or trust. See Nail v. Thompson, 806 S.W.2d 599, 
600 (Tex. App.—Fort Worth 1991, no writ); see also Cutrer, 345 S.W.2d 
at 515 (holding that an adopted child is not entitled to property conveyed or 
devised to the children of the adoptive parent); Vaughn v. Vaughn, 337 
S.W.2d 793, 797 (Tex. 1960) (stating that use of the word “born” renders it 
most improbable that the testator was referring to children born to strangers); 
Murphy v. Slaton, 273 S.W.2d 588, 597 (Tex. 1954) (holding that child, 
children, or descendants of any child or children did not include adopted 
children).
        The 
next clause in the trusts states that “the children, and their heirs, of any 
deceased child of her body [are] entitled to their parent’s portion per 
stirpes.” Although Roeser created a limitation that only children “of the 
body” of Emily and Ellen (Roeser’s grandchildren) could receive income and 
corpus from trusts, this limitation does not extend to their grandchildren 
(Roeser’s great-grandchildren), as demonstrated by the removal of the “of 
the body” language in the second clause. Because this language discloses an 
intent contrary to the presumption of the 1931 adoption statute, it controls. 
Furthermore, it must be assumed that Roeser knew the presumption under the 1931 
statute and the cases construing it, which excluded adopted children unless the 
will or trust included contrary language. See Cutrer, 345 S.W.2d at 517 
(stating that if the statute is to be given any weight on the theory of presumed 
knowledge of the law, it must be assumed that the parties knew of its limited 
application).
        Including 
the “of the body" language in the first clause, but deleting it from the 
following clause indicates that Roeser intended to include adopted 
great-grandchildren. Although appellants argue that it is simply not logical to 
assume that Roeser would exclude adopted grandchildren but include adopted 
great-grandchildren, we cannot redraft wills to add provisions “under the 
guise of construction” to reach a presumed intent. San Antonio Area Found. 
v. Lang, 35 S.W.3d 636, 639 (Tex. 2000); see also Sanderson, 
446 S.W.2d at 723 (stating that courts may not rewrite the will even if the 
court thinks that the testator was unreasonable, unjust, or unwise in 
bequeathing and devising his property as he did).
        Appellants 
rely on this court’s decision in Nail v. Thompson in which we held that 
the word “born” precluded adopted beneficiaries from inheriting from the 
immediate heirs as well as their descendants. 806 S.W.2d at 601. The facts in Nail, 
however, are distinguishable. In Nail, the trust language stated that the 
assets should be delivered to “the lawful heirs (or descendants of same), if 
there be any then living, born of the body of my [named sibling or 
in-law]; said . . . share[s] to be divided and to be distributed to such 
lawful heirs (or descendants of same), per stirpes.” Id. at 600. We 
determined that the “born of the body” language excluded adopted persons. Id. 
The testator’s intent to exclude adopted persons was made even clearer by use 
of the term “lawful heirs (or descendants)” because the law in effect at the 
time did not allow adopted children to inherit through their parents; therefore, 
an adopted person was not a lawful heir. Id. at 601. Here, Roeser does 
not use the same language for the various classes and generations of 
beneficiaries that was used in Nail. Furthermore, Nail did not 
create a rule of exclusion of all future generation adopted children regardless 
of the testator’s use of contrary testamentary language; it simply applied 
unambiguous terms clearly showing the testator’s intent for that will.
B. Pavelic Trusts
        Under 
article four, section 3 of Pavelic’s will, Pavelic established a separate 
trust for the benefit of each grandchild living at her death. She defined 
“grandchild” or “grandchildren” as “children born . . . to my two 
daughters, Emily Roeser Parker and Ellen Roeser Brants.” Upon termination of 
each trust, the assets would be distributed to the grandchild for whom the trust 
was created. If a grandchild for whom a trust was created died before 
termination of the trust and was survived by any descendants, the trust assets 
would pass to the descendants who were living at the date of termination. In the 
will, “descendants” and “descendant” are defined as “the lawful issue 
of a deceased person in the line of descent and shall not be construed to 
include the issue of a parent in the line of descent who is living at the time 
in question.”[8]
        In 
a codicil, Pavelic also established a trust for her husband that would terminate 
upon his death. Upon termination, the assets of the trust would be distributed 
according to article four of the will, if the Pavelic trusts still existed. If 
the Pavelic trusts did not exist, the assets would pass free of trust to Emily, 
Ellen, and their descendants. According to the codicil, “'[D]escendants' as 
used in this Section shall mean any natural born child or children in the 
line of descent of a deceased parent.” [Emphasis added.]
        In 
will construction, we apply the law as it existed at the time the will was 
executed. Penland, 940 S.W.2d at 326. Pavelic’s will is controlled by 
the 1951 adoption statute, which stated:
  
[A] child shall . . . be 
deemed and held to be for every purpose the child of its parent or parents by 
adoption as fully as though naturally born to them in lawful wedlock . . . . 
Such adopted child shall be regarded as a child of the parent or parents by 
adoption for all other purposes as well, except that where a deed, will, or 
other instrument uses words clearly intended to exclude children by adoption, 
such adopted child shall not be included in such class.

See Act of May 7, 1951, 
52nd Leg., R.S., ch. 249, 1951 Tex. Gen. Laws 1388, 390, amended 
1973, 1977, 1987, 1989, 1991, repealed and recodified by Act of April 6, 
1995, 74th Leg., R.S., ch. 20, §§ 1, 2, 1995 Tex. Gen. Laws 113, 
221, 282 (current version at Tex. Fam. 
Code Ann. § 162.017 (Vernon 2002)) (stating that the terms “child,” 
“descendant,” or “issue,” and other terms indicating the relationship of 
parent and child include an adopted child unless the context or express language 
clearly indicates otherwise). Thus, the statutory presumption was that adopted 
children were included as beneficiaries unless words clearly indicated that they 
were excluded. See Vaughn, 337 S.W.2d at 796.
        Appellants 
first argue that a testator’s use of language of exclusion in one section of a 
will is effective as to the entire will. They argue that “descendants,” as 
defined in article three-A, section three of the codicil, should control the 
whole document. The codicil states that “'descendants' as used in this Section 
shall mean any natural born child or children in the line of descent of a 
deceased parent.”
        Appellants 
rely on Sharp v. Broadway National Bank, in which the appellants argued 
that because two will provisions did not specifically exclude adopted children, 
they were entitled to receive the benefits of the trust. 761 S.W.2d at 143. The 
court upheld the trial court’s decision to exclude adopted children based on 
the language in another provision of the will, in which the testator expressly 
stated that he wanted “relatives of the whole blood and/or their issue [to] 
receive the greatest benefit . . . and not any strangers, or relatives of the 
half blood, or their issue.” Id. at 143-45.
        Here, 
Pavelic’s will does not contain such strong language to show an intent to 
exclude adopted great-grandchildren. Furthermore, we believe that Hagaman v. 
Morgan settles the issue of whether the use of exclusion language in one 
section of a will is effective as to the entire will. 886 S.W.2d 398 (Tex. 
App.—Dallas 1994, writ denied). The will dispute in Hagaman centered 
around two provisions. One provision determined how a life estate would be 
devised if any of the testatrix’s children predeceased her and specifically 
discussed an adopted grandchild. The second provision stated, “Upon 
termination of the life estate of each of my children, I give, devise, and 
bequeath the remainder thereof to that child’s bodily issue, share and share 
alike, or their bodily issue in their stead, per stirpes.” Id. at 399. 
Because the testatrix’s four children survived, the provision discussing the 
adopted grandchild never applied. Id. at 400. Although the appellants 
tried to argue that the testatrix intended to limit the devise to blood 
relatives because she mentioned the adopted grandchild in one provision and not 
the other, the court disagreed. Id. at 402. The court held that it did 
not even reach the provision concerning the adopted grandchild because all of 
the testatrix’s children were living at her death; therefore, the provision 
never became effective. Id. The provision providing for the life estate 
to go to her children’s “bodily issue” controlled. Id. Because the 
court held that terms such as “bodily issue” included adopted children under 
the 1951 adoption statute, the adopted grandchild was a beneficiary under the 
will. Id.         Here, 
appellants are also relying on a definition from an article of Pavelic’s will 
that never became effective.[9]  The article 
applied only if Pavelic’s husband died and his trust, along with the Pavelic 
trusts, had been terminated. Here, the Pavelic trust did not terminate before 
his death. Therefore, the trust assets were disposed of under the terms of the 
Pavelic trust created in article four. Similar to the Hagaman court, we 
do not reach the question of whether the article three-A provision controls 
because it never became effective. Accordingly, we do not construe the 
definition of “descendants” as used in that article to apply to the entire 
will.[10]
        We 
now focus on the definition of “descendants” as used in article five, 
section six. “Descendants” and “descendant” are defined as “the lawful 
issue of a deceased parent in the line of descent and shall not be construed to 
include the issue of a person in the line of descent who is living at the time 
in question.” As previously mentioned, the presumption of the 1951 statute 
provided adopted children a status equivalent to natural children for 
inheritance purposes unless a will specifically excluded them. See Sharp, 
761 S.W.2d at 144. Thus, appellees are presumed beneficiaries under the Pavelic 
trust unless the will contains specific language showing a contrary intent.
        Although 
when Pavelic created the separate trusts for her grandchildren she provided a 
limitation that grandchild or grandchildren means "children born . . . to 
my two daughters, Emily Roeser Parker and Ellen Roeser Brants,” she did not 
include this limitation as to those who may take under the trusts if a 
grandchild was deceased. She simply stated that the property should pass to the 
living descendants, which are defined as “lawful issue.” By choosing the 
term “lawful issue,” Pavelic specifically rejected other terms, such as 
“born” and “of the body,” that have commonly been construed to exclude 
adopted persons. See Penland, 940 S.W.2d at 327; see also Ortega v. 
First RepublicBank Fort Worth, 792 S.W.2d 452, 454 (Tex. 1990) (op. on 
reh’g) (holding that “any other great-grandchildren who may be born after my 
death” excluded adopted children); Nail, 806 S.W.2d at 601 (holding 
that “lawful heirs . . . born of the body” excluded adopted children). We 
conclude that Pavelic’s use of “lawful” to modify “issue” indicates 
her intention to include all persons who became “issue” by any legal 
process, including adoption. See Penland, 940 S.W.2d at 327. Thus, 
appellees are beneficiaries under the Pavelic trust.
        Because 
appellees are beneficiaries under the Roeser and Pavelic trusts, we hold the 
probate court did not err in granting appellees’ motions for summary judgment. 
Accordingly, we affirm the probate court’s partial summary judgments in favor 
of appellees.[11]
V. Conclusion
        Having 
overruled all of appellants’ issues, we affirm the trial court’s judgments.
 
 
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
 
  
PANEL B:   LIVINGSTON, 
DAUPHINOT, and GARDNER, JJ.
 
DELIVERED: February 5, 2004

 
NOTES
1. Probate 
court cause number 83-1196-1 was assigned to the action concerning the will of 
Maxine Shannon Pavelic (now appellate court cause no. 2-02-312-CV); probate 
court cause number 49-20098-1 was assigned to the action concerning the will of 
Charles F. Roeser (now appellate court cause no. 2-02-313-CV). The cases have 
been consolidated on appeal.
2. Patrick 
Allison Parker is not a party to this appeal.
3. See, 
e.g., In re Y.M.A., 111 S.W.3d 790, 791-92 (Tex. App.—Fort Worth 2003, no 
pet.).
4. Following 
the probate judge’s September 10 letter ruling on the parties’ motions for 
summary judgment, this court denied appellants’ petitions for writ of mandamus 
as moot. In re Parker, Nos. 02-01-280-CV, 02-01-281-CV (Tex. App.—Fort 
Worth Sept. 14, 2001) (orig. proceeding) (not designated for publication).
5. For 
example, the trial court’s oral announcement of recusal could have been 
presented perhaps at a hearing on a recusal motion or a hearing on a motion for 
new trial.
6. Appellants 
argue that appellees failed to file a response or object to any part of their 
summary judgment motions; therefore, all of their evidence is taken as true, and 
they are entitled to summary judgment. As the appellees correctly argue, 
however, the Texas Supreme Court has held that when parties file cross- motions 
for summary judgment, the trial court should treat one cross motion as a reply 
to the other cross-motion. See DeBord v. Muller, 446 S.W.2d 299, 
301 (Tex. 1969) (holding that because both summary judgment motions were 
properly before the court at the time judgment was rendered, all the evidence 
accompanying defendant's motion for summary judgment was likewise evidence to be 
considered in deciding plaintiff's motion and vice versa). Thus, all legal 
arguments were properly presented to the probate court in the motions for 
summary judgment.
7. See 
Act of May 21, 1931, 42nd Leg., R.S., ch. 177, § 9, 1931 Tex. Gen. 
Laws 300, 302, amended 1951, 1973, 1977, 1987, 1989, 1991, repealed 
and recodified by Act of April 6, 1995, 74th Leg., R.S., ch. 20, 
§§ 1, 2, 1995 Tex. Gen. Laws 113, 221, 282 (current version at Tex. Fam. Code Ann. § 162.017 (Vernon 
2002)).
8. When 
Pavelic died in 1983, a trust was created for Earle Whitney Parker as required 
under article four, section three. When Earle died in 1998, he was survived by 
appellees, his two adopted children.
9. Article 
three-A of the “Third Codicil to the Last Will and Testament of Maxine Shannon 
Pavelic” states that “'[D]escendants' as used in this Section shall mean any 
natural born child or children in the line of descent of a deceased parent.”
10. 
Furthermore, the definition in article three-A specifically states that it 
applies only to that section of the will.
11. 
Appellants argue that Ortega, Vaughn, and Nail are 
controlling because these cases hold that use of the word “born” shows the 
testator’s intent to exclude adopted children from taking under a will. Ortega, 
792 S.W.2d at 454; Vaughn, 337 S.W.2d at 798; Nail, 806 S.W.2d at 
601. This argument, however, ignores the different wording used in the Pavelic 
will to define “grandchildren” and “descendants” as those terms relate 
to the trusts. Pavelic specifically omitted the term “born” in defining 
“descendants” and used a term that includes adopted children. See Penland, 
940 S.W.2d at 327 (holding that “lawful issue” indicates a testator’s 
intent to include adopted children).