

# NUMBER 13-12-00619-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE DANIEL E. ARNOLD

## On Petition for Writ of Mandamus

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Chief Justice Valdez[1]**

By petition for writ of mandamus, Daniel E. Arnold seeks to quash the deposition of his accountant, Jim Spence, and to avoid the discovery of federal income tax returns and net worth. We conditionally grant in part and deny in part the petition for writ of mandamus as stated herein.

### I. BACKGROUND

This is a negligence and premises liability case. Gerardo Gonzalez was seriously injured in the course and scope of his employment with AW Produce, Inc.

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions).

("AW Produce"), a produce distribution company, when his arm was entangled in an operating conveyor belt resulting in a de-gloving injury.[2]  Gonzalez lost the use of his arm.  The accident occurred at a warehouse facility or "shed" located at 2300 Vo-Tech in Mercedes, Texas.  Arnold is the owner of the real property and warehouse and is the president and "employee" of AW Produce.  Arnold also owns and operates several other businesses operating from the property, including AW Produce, Arnold Realties, and Daniel Arnold Farms.  The record before the Court does not include documentation regarding whether each of these businesses were formally incorporated.

Subsequent to the injury, Gonzalez received workers compensation benefits from AW Produce and brought suit against Arnold, L & M Companies, Inc. ("L & M"), Meco Ventures, Inc., and Stephen W. Miller for premises liability, respondeat superior, negligence, and gross negligence.  According to the live petition at the time of the ruling herein,[3] Gonzalez could neither extract his arm from the conveyor belt nor immediately turn off the machine.  Gonzalez alleged that it took an extended period of time to turn off the machines because of the way they had been set up on the premises and his injuries were "caused and exacerbated by the dangerous layout and condition of the premises."

---

[2] Counsel for Gonzalez described Gonzalez's injuries as "a degloving injury where all of the . . . muscle, tissue, nerves, [were] ripped off and the bones were cracked in half."

[3] Gonzalez presented both his first amended original petition and his second amended original petition in his response to the petition for writ of mandamus.  The second amended petition was not before the trial court at the time of the hearing on the motion to quash or the order at issue herein, and we do not consider it in this proceeding.  *See In re Taylor*, 113 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) (stating that, in mandamus proceedings, we "focus on the record that was before the trial court" and exclude from our consideration filings "that were not part of the trial court record at the time of the hearing on the motion that is the subject of the original proceeding").  In any event, neither the first nor the second amended petitions sues any of the defendants under the provisions of Texas Rule of Civil Procedure 28 regarding assumed or common names or asserts alter ego or any other theory relevant to piercing the corporate veil.  *See* TEX. R. CIV. P. 28.

In short, it appears that the warehouse facility was massive and the kill switch for the conveyor belt was located a great distance away from it.

Gonzalez contended that his injuries resulted in part from substandard electrical work directed by Arnold and L & M, and performed by Meco Ventures, Inc. and Miller. Gonzalez alleged that Arnold and L & M owned and occupied the property and were responsible for the dangerous layout and condition of the premises. Gonzalez further alleged that Arnold (1) owned and operated the premises where Gonzalez was injured, (2) had a controlling and management interest in different businesses on the property, and (3) was not a passive landlord but instead exercised control over the premises, fixtures, and work performed on the property.

During discovery, Gonzalez learned that another employee of AW Produce previously had been injured when his arm was similarly caught in the conveyor belt.[4] Gonzalez deposed Arnold, who testified that he personally owned 2300 Vo-Tech but leased the property to AW Produce by an oral, yearly lease. Arnold testified that he and Jim Spence, the accountant for AW Produce, determined what "a fair lease agreement would be" and determined the amount of rent payable to Arnold. Arnold also testified that part of this oral lease agreement encompassed AW Produce taking care of "all the repairs and maintenance and insurance." As evidence of this lease agreement, Arnold produced the "Schedule E" attachments from his 2003, 2004, 2005, 2007, and 2008 federal tax returns, each of which indicated that Arnold received $84,000 annually in rental income. Arnold testified that he owned the realty personally but AW Produce owned "all of the personal property" and "everything inside the property," including the

---

[4] If there has been any discovery establishing or refuting the degree of similarity of this previous incident under *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 139 (Tex. 2004), that is beyond the scope of this mandamus record.

3

machines, fixtures, and equipment, although Hidalgo County Appraisal District records indicated "AW Produce Daniel E. Arnold" as owner. Arnold also applied for an electrical permit regarding the subject property which identified "AW Produce/Danny Arnold" as owner.

Although Arnold testified that he leased the property, by oral lease, to AW Produce, Arnold also leased the property, by written lease, to L & M. The written lease identifies the owner of the property as AW Produce rather than Arnold. Arnold admitted this was incorrect. The lease with L & M also states that the owner of the property has responsibility for maintenance and repair of the premises.

After Gonzalez deposed Arnold and engaged in other discovery, he noticed Spence's deposition and included a subpoena duces tecum that requested several categories of documents pertaining to the property at 2300 Vo-Tech, tax returns, and net worth. Arnold filed a motion to quash the deposition on various grounds and also filed objections and responses to the subpoena duces tecum. Spence did not appear in the case to file a motion for protection or otherwise object to the notice of deposition.

After an evidentiary hearing, the trial court overruled Arnold's objections and denied the motion to quash. This original proceeding ensued. By three issues, which we have reordered, Arnold contends that the trial court erred by: (1) not quashing the deposition of Arnold's personal accountant; (2) compelling production of the complete 2010 federal income tax returns of Arnold, AW Produce, Inc., and Arnold Realty; and (3) compelling production of net worth documents for years other than 2010 to present and for entities not parties to the lawsuit.[5] The Court requested and received a response to

---

[5] We note that the parties have entered a confidentiality agreement regarding documents that Arnold contends contain confidential information. *See* Tex. R. Civ. P. 11.

4

the petition for writ of mandamus from Gonzalez, and further received a reply thereto from Arnold.

## II. MANDAMUS

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding).

The scope of discovery is generally within the trial court's discretion. *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995). Parties may seek discovery "regarding any matter that is not privileged and is relevant to the subject matter of the pending action . . . ." TEX. R. CIV. P. 192.3(a). Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. TEX. R. EVID. 401. However, a trial court abuses its discretion when it orders discovery exceeding the scope permitted by the rules of procedure. *In re CSX Corp.*, 124 S.W.3d at 152. Mandamus relief is available when the trial court compels production beyond the permissible bounds of discovery. *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding); *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).

5

### III. DEPOSITION OF JIM SPENCE

We first examine Arnold's contention that the trial court erred in failing to quash Spence's deposition based on the accountant-client privilege. Arnold cites section 901.457 of the Texas Occupation Code in support of his argument. *See* TEX. OCC. CODE ANN. § 901.457 (West 2004). This section, titled "Accountant-Client Privilege," provides, in relevant part, the following:

(a)  A license holder . . . may not voluntarily disclose information communicated to the license holder . . . by a client in connection with services provided to the client by the license holder . . ., except with the permission of the client . . . .

(b)  This section does not prohibit a license holder from disclosing information that is required to be disclosed:

\* \* \* \* \*

(2)  . . . under a court order if the . . . order:

(A)  is addressed to the license holder;

(B)  mentions the client by name; and

(c)  requests specific information concerning the client . . . .

*Id.* We disagree with Arnold's contentions for a variety of reasons. First, although he identifies Spence as the accountant for AW Produce in his deposition testimony, Arnold produced no evidence to substantiate any claim of an alleged privilege. The party who seeks to limit discovery by asserting a privilege has the burden of producing evidence to support its assertions. *See* TEX. R. CIV. P. 193.4(a), 199.6; *In re E. I. DuPont de Nemours & Co.*, 136 S.W.2d 218, 227 (Tex. 2004) (orig. proceeding) (holding that the party asserting a privilege has the burden of proof and must make a prima facie showing, which requires the "minimum quantum of evidence necessary to support a

6

rational inference that the allegation of fact is true"); *Huie v. DeShazo*, 922 S.W.2d 920, 926 (Tex. 1996) (stating that evidence is necessary to support a claim of privilege). Specifically, for instance, there is no evidence in the record that Spence is a licensed accountant or that any communications at issue were intended to be confidential.

Second, as we have stated, the existence of an accountant-client privilege based on section 901.457 is doubtful. *See In re Patel*, 218 S.W.3d 911, 919–21 (Tex. App.—Corpus Christi 2007, orig. proceeding) ("[B]ecause the law is not clear on this issue, to the extent the trial court's denial of the motion to quash in this case was based on no privilege, we cannot conclude it abused its discretion" in denying motion to quash). In fact, the federal courts, even those construing this same section of the Texas Occupations Code, reject such a privilege. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 817 (1984) ("[N]o confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases."); *Canyon Partners, L.P., v. Developers Diversified Realty Corp.*, No. 3-04-CV-1335-L, 2005 U.S. Dist. LEXIS 26782 at *3 (N.D. Tex. Nov. 4, 2005) (mem. op.) ("The court initially observes that there is no accountant-client privilege under federal or Texas law.").

Third, even if we were to assume that section 901.457 created a privilege, the instant deposition falls within the statutory exception to the privilege as a court order directed to Spence, mentioning Arnold by name, and requesting specific information concerning Arnold. *See* TEX. OCC. CODE ANN. § 901.457. And finally, even if we were to recognize an accountant-client privilege and conclude that this matter did not fall within the statutory exception to the alleged privilege, any such privilege would not apply

7

where the accountant was employed in a capacity other than as an accountant, such as a negotiator. *See Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 332 (Tex. App.—Austin 2000, pet. denied) (refusing to apply attorney-client privilege where attorney was not acting in capacity as attorney).

In this case, Arnold identified Spence as the CPA for AW Produce who represented AW Produce in deciding with Arnold regarding "[w]hat a fair lease agreement would be." Arnold testified that he and Spence decided how much AW Produce would pay Arnold to lease the property. Given that (1) the lease agreement was between Arnold in two different capacities, that is, individually and as president of AW Produce, (2) the lease was oral rather than written, (3) the lease was allegedly renewed on an annual basis for multiple years without a change in leasehold price, and (4) documents and testimony in the record indicate that Arnold has affirmatively misidentified the ownership of the property, we conclude that the request to depose Spence is reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a); *In re CSX Corp.*, 124 S.W.3d at 152. Spence's actions and knowledge regarding the ownership of the subject property are relevant to the premises liability issues in this case and render him a fact witness subject to deposition. Moreover, leaving these matters aside, Arnold did not file a motion for protective order as required by Texas Rule of Civil Procedure 192.6 when discovery about a party is sought from a nonparty. *See* Tex. R. Civ. P. 192.

We overrule Arnold's issue concerning the trial court's alleged error in allowing Spence to be deposed.

## IV. FEDERAL INCOME TAX RETURNS

Arnold contends that the trial court erred in compelling the production of complete 2010 federal income tax returns for Arnold, AW Produce, and Arnold Realty. Arnold specifically notes that neither AW Produce nor Arnold Realty is a party to this lawsuit. As an initial matter, we note that Arnold has already produced "Schedule E" regarding "Supplemental Income and Loss" in order to show that he personally received $84,000 annually for rental of the property. As stated previously, Arnold owns the property, although he has also represented that AW Produce owns it. Arnold is president of both AW Produce and Arnold Realty. With regard to Arnold Real Properties, Arnold testified that "there's nothing—nothing there," "it was nothing ever— ever developed out of it," it "was never [a] business," and "there never was anything to this business."

Federal income tax returns are discoverable to the extent they are relevant and material to the issues presented in the lawsuit. *Hall v. Lawlis*, 907 S.W.2d 493, 494–95 (Tex. 1995). Stated otherwise, tax returns may be discovered when the "pursuit of justice between litigants outweighs protection of their privacy." *Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962). If some, but not all, of an income tax return is discoverable, discovery should be limited to the relevant parts. *Id.* (holding that the trial court abused its discretion by ordering entire income tax returns for individuals and corporations to be produced "without separation of the relevant and material parts from the irrelevant and immaterial parts"). Further, tax returns may not be discovered when they would be duplicative of other information already provided or, when sought for the purposes of ascertaining net worth, there are other adequate methods to determine net

worth. *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1991) (orig. proceeding) (per curiam); *see In re Williams*, 328 S.W.3d 103, 116–17 (Tex. App.—Corpus Christi 2010, orig. proceeding); *In re Brewer Leasing, Inc.*, 255 S.W.3d 708, 713–15 (Tex. App.—Houston [1st Dist.] 2008); *In re Garth*, 214 S.W.3d 190, 194 (Tex. App.—Beaumont 2007, orig. proceeding [mand. dism'd]).

When a party objects to the production of tax returns, the party seeking to obtain the tax returns has the burden to show that they are relevant and material to the issues in the case. *El Centro del Barrio, Inc. v. Barlow*, 894 S.W.2d 775, 779 (Tex. App.—San Antonio 1994, no writ). The burden is thus unlike general discovery requests, which place the burden on the party resisting the discovery. *See In re Patel*, 218 S.W.3d at 916.

Gonzalez has the burden to show that the tax returns are discoverable. *See id.* Gonzalez contends that Arnold has put the tax returns at issue by offering a portion of his tax returns as the "sole basis" to support his contention that he leased the property to AW Produce. Gonzalez further alleges that the returns will clarify the nature and scope of Arnold's business activities at 2300 Vo-Tech given that he operates several businesses there and has refused to answer discovery in this case "in the capacity in which he has been sued." Finally, Gonzalez alleges that if Arnold Realty is in fact a defunct business, there would be no federal income tax forms to be produced.

After reviewing the mandamus record and petition, we conclude that Arnold has failed to establish an abuse of discretion by the trial court with regard to his 2010 tax return and that of AW Produce. *See, e.g., Hall*, 907 S.W.2d 493, 494 (Tex. 1995) ("Income tax returns are discoverable to the extent they are relevant and material to the

10

issues presented in the lawsuit."). Arnold is utilizing a portion of his tax returns to substantiate his claims about the ownership and rental of the property. The income tax returns are both relevant and material regarding the ownership and control over 2300 Vo-Tech given the nature of this matter as a premises liability case, particularly given that a prior similar accident occurred on the premises. If AW Produce paid Arnold $84,000 annually in rentals, as evidenced by the Schedule E forms produced by Arnold, then AW Produce's income tax returns should similarly reflect these transactions. In this regard, we note that the record is undisputed that Arnold owns AW Produce, controls it, and has made affirmative misrepresentations regarding ownership of the subject property. Moreover, the production of tax returns in this case is not duplicative of other discovery. Further, there are no other adequate methods to examine the rental issues given that the leasehold at issue was allegedly oral in nature.

We reach a different conclusion, however, with regard to the 2010 federal income tax return for Arnold Realties. Gonzalez has failed to show that the tax return of Arnold Realties is relevant or material to the subject matter at issue in this case. According to the live pleadings, Arnold Realties is not involved in this lawsuit in any capacity, and a request for tax returns to ascertain whether or not Arnold's representations regarding the status of that company are true is merely a prohibited fishing expedition. *See Dillard Dep't Stores*, 909 S.W.2d at 492. The current record is devoid of any factual allegations regarding ownership or control of Arnold Realties or any legal allegations regarding common business enterprise or alter ego which would render discovery pertaining to this entity relevant or material. Accordingly, Arnold's issue is sustained in part insofar as he contends the trial court erred in requiring the production of the 2010 tax return of

11

Arnold Realties, and denied in part regarding the 2010 tax returns of Arnold and AW Produce.

## V. NET WORTH

Finally, Arnold contends that the trial court erred in compelling production of "net worth documents for years other than 2010 to present and for entities not parties to the lawsuit." Arnold's contention is based on the transcript of the hearing on the motion to quash rather than the written order on discovery issued after the petition for writ of mandamus was filed.[6] The written order, which is the order subject to review in this case, compels the production of documents indicating Arnold's net worth in 2010 and documents indicating his present net worth.

A defendant's net worth is relevant in a suit involving exemplary damages. *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1988) (orig. proceeding). Therefore, in cases where punitive or exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth. *Id.* at 472–73; *see also In re Islamorada Fish Co. Tex., LLC*, No. 05-10-344-CV, 2010 Tex. App. LEXIS 6309, at *6 (Tex. App.—Dallas Aug. 5, 2010, orig. proceeding) (op. on reh'g) (declining to allow discovery of net worth information because exemplary damages were not available for causes of action pleaded). Moreover, discovery regarding net worth must be narrowly crafted to show current net worth. *In re House of Yahweh*, 266 S.W.3d 668, 673 (Tex. App.—Eastland

---

[6] It is clear that mandamus may be based upon an oral ruling. *In re Nabors*, 276 S.W.3d 190, 192 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding); *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding); *In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding). However, an oral ruling is not subject to mandamus review unless the ruling is clear, specific, enforceable, and adequately shown by the record. *In re Bledsoe*, 41 S.W.3d at 81; *In re Perritt*, 973 S.W.2d 776, 779 (Tex. App.—Texarkana 1998, orig. proceeding); *see also In re Am. Power Conversion Corp.*, No. 04-12-00083-CV, 2012 Tex. App. LEXIS 1241, at **1–2 (Tex. App.—San Antonio Feb. 15, 2012, orig. proceeding) (per curiam mem. op.). In this case, the trial court's oral rulings were unclear; however, the record has been supplemented with the trial court's written order subject to review herein.

2008, orig. proceeding) (holding that the trial court erred by requiring production of previous years' balance sheets and other documents that did not show net worth); *In re Brewer Leasing, Inc.*, 255 S.W.3d at 712 (holding that a trial court abuses its discretion by ordering the production of financial records "that would not necessarily evidence" net worth); *In re Garth*, 214 S.W.3d at 192 (holding that the trial court erred by requiring production of income statements because they would not show current net worth); *see also In re Ameriplan Corp.*, No. 05-09-01407-CV, 2010 Tex. App. LEXIS 31, at \*2 (Tex. App.—Dallas Jan. 6, 2010, orig. proceeding) (mem. op.) (holding that the trial court erred in ordering the production of documents that did not show current net worth, including income statements and old balance sheets).

In this case, Gonzalez has raised causes of action for which exemplary damages may be awarded, and accordingly, Arnold's current net worth is discoverable. At the hearing on the motion to quash, Arnold stated for the record his agreement to produce current net worth information. The trial court's order, in contrast, required the production of data in 2010, when Gonzalez was injured, and at the present time. We conclude that the trial court abused its discretion in ordering the production of historical net worth information. *In re Garth*, 214 S.W.3d at 192; *see also In re Shaw*, No. 13-10-00487-CV, 2010 Tex. App. LEXIS 8744, at \*7 (Tex. App.—Corpus Christi Oct. 27, 2010, orig. proceeding) ("Moreover, discovery regarding net worth must be narrowly crafted to show current net worth."). Accordingly, we sustain Arnold's third and final issue.

## VI. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response thereto, and the reply, is of the opinion that Arnold has shown

himself entitled to some relief. Accordingly, the stay previously imposed by this Court is LIFTED. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We conditionally grant mandamus relief and direct the trial court to withdraw its order requiring the production of federal income tax returns for Arnold Realty and the production of Arnold's historical net worth information. We deny all other relief sought in this original proceeding. In so ruling, we emphasize that this ruling is based solely on the pleadings and evidence that were before the trial court and are before this Court, and we express no opinion herein regarding the resolution of any future discovery disputes that might arise during the conduct of this case.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
30th day of November, 2012.

14